FILED
12/10/2024
Clerk of the
Appellate Courts

THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 19, 2024

**JOSEPH E. GRAHAM v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Montgomery County
No. 2016-CR-1227    William R. Goodman III, Judge**

_____

**No. M2024-00108-CCA-R3-PC**

_____

The Petitioner, Joseph E. Graham, appeals from the Montgomery County Circuit Court's denial of post-conviction relief from his convictions for two counts of first degree felony murder, seven counts of especially aggravated kidnapping, five counts of attempted aggravated robbery, and one count of especially aggravated burglary and his effective sentence of life imprisonment plus twenty years. On appeal, the Petitioner contends that the post-conviction court erred by (1) denying relief on his ineffective assistance of counsel claim and (2) denying his motion for a continuance of the post-conviction hearing. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

Gordon Rahn (on appeal) and Alexa M. Spata (at hearing), Clarksville, Tennessee, for the appellant, Joseph E. Graham.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; J. Katie Neff, Assistant Attorney General; and Robert J. Nash, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Petitioner's convictions relate to his participation in a July 21, 2013 home invasion, in which nine victims were present. The Petitioner was tried jointly with codefendant Curtis Shelton, Jr. Codefendant Kentavius Montrell Cheeks entered into a plea agreement and testified at the trial.

The trial evidence showed that in the early morning hours of July 20, 2013, the Petitioner and the codefendants entered the basement of a home in which nine people were having "a small get-together with friends." The intruders were armed with a handgun, a crowbar, and a rubber mallet, and they wore gloves and masks. The intruders forced the victims into the basement and "hog tied" them with duct tape. The victims were held at gunpoint while the intruders demanded money, drugs, and electronics, and some of the victims were assaulted when "their demands were not answered." While two of the intruders searched the home, five of the victims broke free from the duct tape and attacked the intruder tasked with watching the victims in the basement. During the attack, the intruder watching the victims was "rammed . . . through a drop ceiling tile," and the victims threw a television and a dumbbell on top of the intruder, who yelled for assistance from his coconspirators. When the two coconspirators returned to the basement, Myles Henricks was fatally shot, and the three intruders fled the scene.

Codefendant Cheeks's trial testimony reflects that he, the Petitioner, and codefendant Moore were "riding around in their neighborhood" when they saw the victims' home. They noticed that the victims were having a party, and the Petitioner "noted that the people were probably drunk and that they should" rob the victims. They obtained a handgun, gloves, black shirts to tie around their faces, and a crowbar, which the Petitioner held during the home invasion. They entered the home through the basement. While inside the home, they restrained the victims with duct tape. Codefendants Cheeks and Shelton searched the home for items to steal, and the Petitioner remained in the basement with the victims. Codefendants Cheeks and Shelton heard a commotion coming from the basement, and they returned to the basement. As they reached the bottom of the basement steps, Mr. Henricks struck codefendant Shelton with an object, and codefendant Shelton shot Mr. Henricks, who died from a gunshot wound to the chest. The Petitioner and the codefendants fled the scene. The Petitioner limped and suffered an injury to his arm for which he later obtained medical treatment.

None of the victims identified the perpetrators, and the Petitioner's fingerprints were not found at the crime scene. Items collected from the scene included a rubber mallet, a damaged ceiling tile from the basement with hair on it, duct tape, and a nine-millimeter cartridge casing. 194 pieces of duct tape were submitted for DNA analysis, and the Petitioner's DNA, along with Mr. Henricks's DNA, was only found on one piece of duct tape. *See State v. Joseph E. Graham*, No. M2019-00388-CCA-R3-CD, 2020 WL 1921098, at *1-5 (Tenn. Crim. App. Apr. 21, 2020), *no perm. app. filed.*

On February 5, 2021, the Petitioner filed a pro se petition for post-conviction relief, alleging multiple instances of ineffective assistance of counsel and asserting that his convictions were based upon evidence obtained pursuant to an unconstitutional search. Post-conviction counsel was appointed and filed two amended petitions for relief. Our review of the evidence presented at the post-conviction hearing is limited to that which is

relevant to the Petitioner's sole allegation on appeal that trial counsel provided ineffective assistance by failing to seek an independent DNA analysis of hair found at the crime scene.

At the December 13, 2023 post-conviction hearing, trial counsel testified that although the victims did not identify the Petitioner as a perpetrator, the codefendants implicated the Petitioner. Counsel recalled that codefendant Cheeks testified at the Petitioner's trial and noted that the convicting evidence centered around codefendant Cheeks's testimony and the Petitioner's DNA found on duct tape at the crime scene.

Trial counsel identified a handwritten letter, which was received as an exhibit, from codefendant Cheeks to the Petitioner. Counsel said that the Petitioner gave him the letter, which stated the Petitioner was not present during the offenses. Counsel stated that the "letter makes no sense whatsoever, unless [the Petitioner] and Mr. Cheeks were involved" in the offenses and that as a result, he did not cross-examine codefendant Cheeks about the letter. Counsel said that the letter implicated the Petitioner in the offense and that the letter showed codefendant Cheeks's attempt to have the Petitioner "lie on the stand."

Trial counsel testified that DNA evidence was collected from the crime scene and that he, initially, attempted to have the evidence suppressed. Counsel said that the State obtained the Petitioner's DNA from a sample collected as a result of a previous felony conviction, that this sample was used during the analysis in the present case, and that the sample from a previous conviction could not be used as evidence in the present case. Counsel said that, as a result, he filed a motion to suppress, that the State did not oppose the motion, and that "there was an order, basically, granting" the motion. Counsel said that afterward, the State obtained a search warrant for the Petitioner's DNA, which was the evidence presented during the trial. Counsel said the State obtained the Petitioner's DNA "properly the second time." Counsel said that he did not file a subsequent motion to suppress because there had been probable cause determinations in connection with the arrest warrant, the preliminary hearing, the grand jury proceedings, and the search warrant. Counsel said that he and the Petitioner discussed the motion to suppress and the subsequent search warrant.

Recalling the trial evidence related to a ceiling tile having been broken, trial counsel testified that the testimony showed "the third person . . . had been, basically, thrown into the ceiling downstairs." Counsel stated that the third person was thought to have been the Petitioner. Counsel said the hair collected from a ceiling tile could have been the Petitioner's hair. Although counsel did not recall whether the Petitioner asked for an independent analysis of the hair, counsel said he did not request one. Counsel said the Petitioner maintained he was innocent because he was not present during the offenses.

Trial counsel testified that at the time of the trial, the State had not analyzed the hair recovered from the crime scene for the presence of DNA evidence. He said that if the hair

-3-

were independently analyzed for DNA evidence, two possible outcomes existed. He said that the absence of DNA would not have placed the defense in any better position and that the presence of the Petitioner's DNA would have been admissible evidence showing the Petitioner was present during the offenses. Counsel said that he was not "in the habit of risking getting a positive result and, thereby, enhancing their case against my clients." Counsel said, though, it was odd that the prosecution did not have the hair analyzed to bolster its case against the Petitioner. Counsel said that more than 200 pieces of evidence were collected, that only a fraction was analyzed, and that only one item showed the presence of the Petitioner's DNA. Counsel recalled that he cross-examined the witnesses extensively about the items that were not collected and about the items that were collected but not analyzed. He said that at least a portion of the duct tape collected was analyzed.

On cross-examination, trial counsel testified that he chose as a matter of trial strategy not to address the handwritten letter from codefendant Cheeks to the Petitioner because the letter connected codefendant Cheeks and the Petitioner to the offenses. Counsel said that he interpreted the letter as an attempt by codefendant Cheeks to get the Petitioner "to come up with a joint story." Counsel said that in order to highlight any inconsistent statements in the letter by codefendant Cheeks, counsel would have been required to present the letter, which showed the Petitioner and the codefendants "were in cahoots on an aggravated burglary that turned into . . . murder."

Trial counsel testified that a three-inch binder of his case file was dedicated to the DNA evidence in this case. He said that he did not rely solely upon the conclusions of the Tennessee Bureau of Investigations (TBI) analysts, that he obtained the reports and the "supporting documentation from the TBI case file," and that he met with and discussed the findings with the TBI analysts. Counsel said that the independent expert he consulted in this case to review the DNA analyses agreed with the TBI analysts' conclusions and that, as a result, counsel did not present a defense DNA expert. Counsel said, though, that he extensively questioned the analysts regarding the Petitioner's DNA having been found on only one of more than 200 pieces of evidence.

Appellate counsel testified that he did not raise an issue related to the Petitioner's DNA having been obtained "illegally," although the Petitioner wanted the issue raised. Regarding any DNA evidence on the hair and the ceiling tile, counsel said he explained to the Petitioner that counsel could not raise those issues because appellate issues were limited to what had been raised at the trial. Counsel's appellate brief was received as an exhibit and reflects that relative to the sufficiency of the evidence, counsel argued that the DNA evidence linking the Petitioner to the crime scene was unreliable to establish the identity of the perpetrator because the analysts could not determine "where, when, or how the [Petitioner's] DNA came to be on the duct tape."

In its written order denying post-conviction relief, the post-conviction court determined, in relevant part, that trial counsel consulted a DNA expert and that the expert could not offer "testimony to rebut" the outcome of the TBI's analyses. The court found that trial counsel was questioned at the hearing regarding the lack of an analysis conducted on the hair found at the crime scene and concluded that the presence of the Petitioner's DNA on the evidence would only have confirmed his involvement in the offenses. The court determined that counsel's decision not to obtain an independent DNA analysis on the hair did not establish deficient performance and that, as a result, the Petitioner failed to establish his ineffective assistance of trial counsel claim. This appeal followed.

## I. Ineffective Assistance of Counsel

The Petitioner contends that the post-conviction court erred by denying relief on his claim that trial counsel's failure to seek independent DNA testing of hair found at the crime scene resulted in ineffective assistance. The State responds that the court did not err by denying relief.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2018). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2018). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . are [not] within the range of competence demanded of attorneys in criminal cases."

*Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The record reflects that at the trial, the prosecution did not present DNA evidence related to the hair recovered from the crime scene, although hair was collected. Counsel did not request an independent analysis of the hair because the results would not have exonerated the Petitioner due to the presence of the Petitioner's and the deceased victim's DNA on a piece of duct tape found on the victim and due to codefendant Cheeks's incriminating testimony. *See Joseph E. Graham*, 2020 WL 1921098, at *2-4. Further, the presence of the Petitioner's DNA on the hair would have been additional evidence showing that the Petitioner participated in the offenses. The chosen defense was that the Petitioner was not guilty of the charges because he was not present during the offenses. Counsel explained that the risk of an analysis on the hair showing the Petitioner's DNA would have bolstered the prosecution's evidence against the Petitioner. Counsel determined that the benefits of an analysis did not outweigh the risks.

Trial counsel, likewise, investigated the TBI's analyses of the DNA evidence. Counsel reviewed the reports, the TBI case file, and discussed the conclusions with the analysts. Counsel consulted an independent DNA expert to review the evidence analyzed, and the expert concurred in the analysts' conclusions. As a result, counsel did not present a defense expert, but counsel extensively questioned the analysts' conclusions and noted that the Petitioner's DNA was found only on a single piece of duct tape when more than 200 items of evidence were collected. The record reflects that counsel made a reasonable strategic decision, based upon adequate preparation, not to request an independent analysis of the hair. *See Adkins*, 911 S.W.2d at 347; *see also Cooper*, 847 S.W.2d at 528.

Further, the Petitioner failed to present any evidence showing that the results of a DNA analysis on the hair would have benefited the defense. This court will not speculate about the nature of any evidence which was not presented at the post-conviction hearing. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). As a result, the record does not preponderate against the post-conviction court's determination that the Petitioner

failed to establish that trial counsel provided deficient performance resulting in prejudice. The Petitioner is not entitled to relief on this basis.

## II.    Motion for a Continuance

The Petitioner contends that the post-conviction court abused its discretion by denying his request for a continuance due to "a conflict" with post-conviction counsel which "greatly affected [his] . . . ability to fully present issues he had raised in his petition and amended petitions." He points to an alleged lack of communication as the basis for his being unprepared to testify at the evidentiary hearing. The State responds that the court did not abuse its discretion by denying the request for a third continuance. We agree with the State.

"[A] motion for a continuance is addressed to the sole discretion of the trial judge," and the judge's decision "will not be reversed on appeal absent an abuse of discretion and prejudice to the defendant." *Baxter v. State*, 503 S.W.2d 226, 230 (Tenn. Crim. App. 1973); *State v. Willis*, 496 S.W.3d 653, 744 (Tenn. 2016); *see State v. Goodwin*, 909 S.W.2d 35, 44 (Tenn. 1995). It is the appealing party's burden to show how the trial court's decision was prejudicial. *Baxter*, 503 S.W.2d at 230. The critical inquiry "is whether one has been deprived of his rights and whether an injustice has been done." *Id*. As a result, the record must reflect that "the denial of the requested continuance 'denied the defendant a fair trial or that the result of the trial would have been different.'" *State v. Vaughn*, 279 S.W.3d 584, 598 (Tenn. Crim. App. 2008) (quoting *State v. Odom*, 137 S.W.3d 572, 589 (Tenn. 2004)); *see Willis*, 496 S.W.3d at 744; *Goodwin*, 909 S.W.2d at 44.

At the beginning of the evidentiary hearing, post-conviction counsel informed the post-conviction court that the Petitioner wanted to continue the hearing. Counsel explained she and the Petitioner disagreed about "how to proceed with the case," and she requested permission to withdraw. The court declined to continue the case and stated that the evidentiary hearing had been continued previously. The court asked the Petitioner if he were in a position to retain an attorney, and he said he was not. Counsel said she was prepared to proceed with the hearing. The court stated that the Petitioner could "testify to what's relevant" and denied the motion for a continuance. The court determined that "there's just been no reason for the case to be continued."

The Petitioner requested a "preliminary order," and the post-conviction court explained that it did not "know what that is" and instructed the Petitioner to sit down. The court asked post-conviction counsel if she were ready to proceed, and counsel responded, "Yes, Your Honor." The Petitioner interjected and stated that he did not wish to proceed because he was not prepared and that counsel "cannot be prepared[] because we're not prepared." The court cautioned the Petitioner that it was "getting ready to find [him] out

of order" and stated that the Petitioner would have the opportunity to testify. The Petitioner stated that he was not prepared to testify.

After a lengthy exchange between the post-conviction court and the Petitioner, the court explained that the evidentiary hearing was not a retrial of the case. The Petitioner stated that he was not prepared for the evidentiary hearing because post-conviction counsel had not subpoenaed any of his desired witnesses. The court asked counsel if she wanted to proceed now or after the lunch recess. Counsel questioned whether a short delay would make a difference. The court acknowledged as much but afforded the Petitioner the opportunity to consider what he wanted to do.

After the recess, the Petitioner informed the post-conviction court that he was not prepared to proceed and that he and post-conviction counsel had "a complete breakdown in communication" and had an unresolvable conflict. The Petitioner requested that the court permit counsel to withdraw and appoint a new attorney. The Petitioner said that he had requested "so much" discovery but had received none. The court stated that in an effort to accommodate the Petitioner's concerns, it would permit counsel to continue the evidentiary hearing for additional proof and evidence, if necessary. The court explained that the hearing was the Petitioner's time to tell the court what he believed "was wrong with [his] trial or the denial of [his] constitutional rights." The Petitioner stated that he was not prepared because he did not have transcripts.

The State noted that the post-conviction proceedings had been pending for three years and that it was ready to proceed with the proof. Post-conviction counsel again requested that she be permitted to withdraw due to the Petitioner's refusal to testify and to communicate with her, but the court instructed her to present the proof. The Petitioner requested that he be removed from the courtroom, but the record reflects that he was present for the evidentiary hearing.

In its order denying post-conviction relief, the post-conviction court addressed the Petitioner's motion for a continuance. The court found that the evidentiary hearing had been rescheduled previously at the Petitioner's request for additional time to prepare for the hearing. The court stated that on December 13, 2023, the Petitioner requested a third continuance on the basis that he was not prepared and was unsatisfied with post-conviction counsel's representation. The court found that the testifying witnesses, who had been subpoenaed on the two previous settings, were present for the evidentiary hearing, and that the court told the Petitioner "at the previous setting . . . that he needed to be prepared on [December 13, 2023]." As a result, the court denied the motion to continue and proceeded with the hearing. The court found that the Petitioner refused to testify and to participate in the hearing.

We conclude that the post-conviction court did not abuse its discretion by denying the Petitioner's motion to continue on the day of the evidentiary hearing. The record reflects that the petition for relief was filed on February 5, 2021, and that the evidentiary hearing occurred on December 13, 2023. The post-conviction proceedings were pending for nearly three years, during which time an initial attorney was appointed. The initial attorney requested the trial transcripts and filed an amended petition on November 2, 2021. On January 26, 2022, the initial attorney requested a continuance from the then-scheduled April 13, 2022 evidentiary hearing due to an engagement related to a judicial conference. The appellate record does not contain an order resolving the motion for a continuance, but the court entered a May 19, 2022 order permitting initial counsel to withdraw based upon the Petitioner's request for new appointed counsel. A second attorney was appointed on May 11, 2022, and a scheduling conference was set for June 13, 2022. On August 26, 2022, post-conviction counsel was appointed to succeed the second attorney for reasons not explained in the record. On November 16, 2022, post-conviction counsel requested transcripts and, later, filed two amended petitions for relief.

Although the record does not contain an order granting any motions for a continuance, the Petitioner was appointed three successive attorneys before the evidentiary hearing, which, at least in part, contributed to the delay in the proceedings. In any event, at the evidentiary hearing, post-conviction counsel stated that she was prepared to proceed with the proof. Although the Petitioner repeatedly stated that counsel could not have been prepared to proceed because the Petitioner was not prepared, the Petitioner did not articulate any reasonable grounds for an additional delay. The Petitioner generally stated, without specificity, that he did not possess any transcripts and "so much" discovery he had requested. The Petitioner did not identify any subject matter about which he lacked information or had not discussed with counsel. Counsel did not raise any concern about not possessing any relevant documentation or evidence. The Petitioner, likewise, stated that counsel had not subpoenaed any of the witnesses he wanted to present at the evidentiary hearing. However, he did not identify the potential witnesses and did not articulate how the witnesses were relevant to litigating his post-conviction allegations. The court explained to the Petitioner that the purpose of the evidentiary hearing was not to relitigate the trial facts but, rather, to address any constitutional violations. Undeterred, the Petitioner refused to participate in the hearing and to communicate with counsel.

Further, the post-conviction court permitted the Petitioner to testify at the evidentiary hearing and to allow post-conviction counsel to request a continuance should the need arise for additional proof. The Petitioner, unsatisfied with this accommodation, refused to communicate with counsel and to testify, although counsel had intended to present him as a witness. The Petitioner, ultimately, requested that he be removed from the courtroom, but he remained in the courtroom for the hearing. After the proof and the parties' arguments, the Petitioner did not request the opportunity to present additional evidence he deemed necessary. The Petitioner's refusal to participate in the evidentiary

hearing did not warrant an additional delay in resolving his post-conviction allegations and did not deny him the right to a fair hearing. Therefore, the Petitioner has failed to establish that he was denied his right to a fair hearing or that the result of the hearing would have been different had the motion to continue been granted. The court did not abuse its discretion by denying the motion for a continuance. The Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.


**s/ Robert H. Montgomery, Jr.**
ROBERT H. MONTGOMERY, JR., JUDGE